This order supplements and amends the secrecy and delivery order of September 18, 2002. It is ordered:

1. The scope of "Excepted Persons" in paragraph 4 is changed by striking "(a) one attorney designated by each respective party; and (b) to the expert witnesses who have participated in the proceedings before Special Master Daniel Dockery; i.e., Howard Andrews and Lucy Allen, on behalf of plaintiffs; Gustavo Bamberger, Brian Kush, Tom Dubinin and Nancy Mathiowetz on behalf of all defendants, except for the Jerry's Sport defendants; and Tim McInerney, on behalf of the Jerry's Sport defendants" and substituting "the parties' counsel of record, including necessary staff within the firms of counsel of record, consulting and testifying experts, and party representatives who are actively involved in assisting counsel of record."

2. If a party has learned the identity of or information about any person or entity identified in the confidential information from sources independent of the confidential information and the person or entity is otherwise referred to in the confidential information, a party shall not be precluded from contacting such person or entity or from using such information from other sources in any proceedings in these actions.

3. The following paragraph will replace paragraph 7: Counsel may make copies for internal use of documents supplied by BATF. They shall be numbered and strictly accounted for. The parties shall maintain an internal record of what copies are made and to whom they are distributed, together with a certification at the appropriate time that all those copies have been retrieved. All copies together with the certificate shall be sent to BATF at the conclusion of this litigation.

SO ORDERED.

**NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP), and National Spinal Cord Injury Association (NSCIA), Plaintiffs,**

v.

**ACUSPORT CORPORATION; Ellet Brothers, Inc., RSR Management Company, and RSR Group, Inc., individually and on behalf of similarly situated entities, Defendants.**

**National Association for the Advancement of Colored People (NAACP), et al., Plaintiffs,**

v.

**American Arms, Inc., et al., Defendants.**

**Nos. 99 CV 7037(JBW), 99 CV 3999(JBW).**

United States District Court, E.D. New York.

Sept. 23, 2002.

**448**

Elisa Barnes, New York City, for plaintiff National Association for the Advancement of Colored People (N.A.A.C.P.).

Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, PC, Short Hills, NJ, by David R. Gross, Christopher M. Chiafullo, for defendants Acusport Corp., Bangers LP, Brazas Sporting Arms, Inc., Camfour, Inc.

Renzulli, Pisciotti & Renzulli, LLP, New York City, by John F. Renzulli, Leonard S. Rosenbaum, for defendants American Derringer Corp., Arcadia Machine & Tool, Inc., Arms Technology, Inc., Astra–Star C/Lbarra S.A., Beemiller, Inc., Browning Arms Co., Century International Arms, Inc., Eagle Imports, European American Armory Corp., F.M.J., Inc., d/b/a/ Full Metal Jacket, Inc., Forjas Taurus, SA., Freedom Arms, Inc., Haskell Co., Import Sports Inc., Israel Military Industries, K.B.I., Inc., Kel–Tec CNC Industries, Inc., Magnum Research Inc., Navegar, Inc., Para–Ordance, Inc., Para–Ordance Mfg. Inc., Savage Arms, Inc., SGS Imports Int'l, Inc., Tanfoglio Fratelli SRL.

Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, PC, Short Hills, NJ, by David R. Gross, Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, PC, Short Hills, NJ, by Christopher M. Chiafullo, Greene Espel, Minneapolis, MN, by Andrew M. Luger, Felhaber, Larson, Fenlon & Vogt, PA, Minneapolis, MN, for defendant Bill Hicks and Co., Ltd.

Morrison, Mahoney & Miller, New York City, by Brian Heermance, Semmes, Bowen & Semmes, Baltimore, MD, by Robert E. Scott, Jr., for defendant B.L. Jennings, Inc., Bryco Arms.

Falk and Siemer, Buffalo, NY, by J. Joseph Wilder, Rutherford & Christie, LLP, New York City, by Fred E. Scharf, for defendant Bond Arms, Inc., Calico Light Weapon Systems, Inc.

Leahey & Johnson, P.C., New York City, by Mark Taustine, for defendant Bonitz Bros., Inc.

Budd Larner, Atlanta, GA, by Timothy A. Bumann, for defendants Braztech, Inc., Braztech Int'l, LC., Gorly Dist., et al.

Pino & Associates, LLP, Westchester Financial Center, White Plains, NY, by Thomas Edward Healy, for defendant Ceska Zbrojovka.

Callan, Regenstreich, Koster & Brady, New York City, by Michael P. Kandler, Timothy G. Atwood, Shelton, CT, for defendant Charco 2000, Inc.

Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, PC, Short Hills, NJ, by David R. Gross, for defendants Chattanooga Sports Supply, Inc. d/b/a Chattanooga Group., Davidson's Supply Co., Inc., Ellett Bros., Inc., Glen Zaners Fur and Sporting, Hicks, Inc., Interstate Arms Corp., Kiesler Police Suppl., Lew Horton Dist. Co., Lipsey's, Inc., McGee's, Inc., Ron Shirk's Shooters Supplies, Inc., Sports, Inc., Southern Ohio Gun, Inc., Valor Corp., Walter Craig, Inc., Williams Shooters Supply, Worldwide Sports Network.

Pino & Associates, Westchester Financial Center, White Plains, NY, by Lawrence G. Keane, Thomas Edward Healy, Jones, Day, Reavis & Pogue, Dallas, TX, by Thomas E. Fennell, Jones, Day, Reavis & Pogue, Dallas, TX, by Michael L. Rice, for defendant Colt's Mfg. Co., Inc.

Pino & Associates, Westchester Financial Center, White Plains, NY, by Lawrence G. Keane, Pino & Associates, Westchester Financial Center, White Plains, NY, by Thomas Edward Healy, for defendant CZ USA.

Friedman & Harfenist, Lake Success, NY, by Steven Jay Harfenist, for defendant Sylvia Daniel.

Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, PC, Short Hills, NJ, by David R. Gross, defendant Desert Mountain Mfg., for defendant Dixie Shooters Supply, Inc.

Henslee, Robertson & Strawn, LLC, Gadsden, AL, by R. Kent Henslee, for defendant Emco, Inc.

Stephen Feinberg, Ellenwood, GA, for defendant Euclid Avenue Sales.

Steven A. Silver, Portersville, CA, for defendant Excel Industries a.k.a. Accu–Tek.

Pavia & Harcourt, LLP, New York City, by Victor Genecin, Pavia & Harcourt, LLP, New York City, by Richard L. Mattiaccio, for defendant Fabbrica d'Armi, Pietro Beretta S.P.A.

Salviano & Tobias, P.C., New York City, by David G. Tobias, for defendants Faber Bros., Inc., et al.

Renzulli, Pisciotti & Renzulli, LLP, New York City, by John F. Renzulli, Leonard S. Rosenbaum, for defendants Glock Inc., G.m.b.H. H & R 1871, Inc.

Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, New York City, by Robert L. Joyce, for defendant Hammerli Ltd., a.k.a. Hammerli GMBH.

Biederman, Hoenig, Massamillo & Ruff, New York City, by Leslie F. Ruff, for defendant Heckler & Koch, GMBH.

Holland & Knight, LLP, New York City, by Marc L. Antonecchia, for defendant Heckler & Koch, Inc.

Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, Atlanta, GA, for defendant Heritage Mfg. Inc.

Callan, Regenstreich, Koster & Brady, New York City, by Michael P. Kandler, for defendant Int'l Armament Corp., d/b/a Interarms.

Leahey & Johnson, P.C., New York City, by James P. Tenney, Mark Taustine, for defendant Jerry's Sports, Inc., d/b/a Jerry's Sports Center, Inc.

Renzulli, Pisciotti & Renzulli, LLP, New York City, by John F. Renzulli, Leonard S. Rosenbaum, for defendant Kel Tec., CNC Industries, Inc., L.A.R. Mfg., Inc., Maverick Arms, Inc.

Callan, Regenstreich, Koster & Brady, New York City, by Michael P. Kandler, Timothy G. Atwood, Shelton, CT, for defendant L.W. Seecamp Co., Inc.

Post, Polak, Goodsell & MacNeill, New York City, by Frederick B. Polak, for defendant Navy Arms Co.

Beckman and Associates, Philadelphia, PA, by Bradley T. Beckman, for defendant North American Arms.

Leahey & Johnson, P.C., New York City, by Mark Taustine, for defendant North East, Inc., Outdoor Sports Headquarters.

Bartlett, McDonough, Bastone & Monaghan, Mineola, NY, by E. Gordon Haesloop, for defendant Olympic Arms, Inc.

Tarics & Carrington, PC, Houston, TX, by Michael J. Zomcik, Michael Branisa, Mark L. Clark, for defendants Phoenix Arms, Inc.

Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, PC, Short Hills, NJ, by David R. Gross, Pamela Betlow, for defendants RSR Group, Inc., RSR Mgmt. Co.

Debevoise & Plimpton, New York City, by Anne Elizabeth Cohen, for defendant Remington Arms Co.

Republic Arms, Chino, CA, by Jim L. Davis, for defendant Republic Arms.

Saviano & Tobias, PC, New York City, by David Gerald Tobias, for defendant Riley's, Inc.

Budd, Larner, Atlanta, GA, by Timothy A. Bumann, for defendants Rossi, SA, Taurus Holdings, Inc., Taurus Int'l Mfg., Inc.

William H. Connor, Georgetown, TX, defendant STI Int'l.

Bartlett, McDonough, Bastone & Monaghan, Mineola, NY, by E. Gordon Haesloop, for defendant Safari Arms, Inc.

Bartlett, McDonough, Bastone & Monaghan, Mineola, NY, by E. Gordon Haesloop, for defendant SGW Enterprises, Inc.

Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, New York City, by Robert L. Joyce, for defendants Sigarms, Inc., Sigarms/Sauer.

**450**

Leahey & Johnson, P.C., New York City, by Mark Taustine, for defendant Simmon's Gun Specialties, Inc.

Shook, Hardy & Bacon LLP, Kansas City, MO, by Gary R. Long, Jeffrey S. Nelson, Greenberg, Traurig, LLP, New York City, by Joel Cohen, for defendant Smith & Wesson Corp.

Schneck, Weltman, Hashmall & Mischel, New York City, by Joanne M. Gray, Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, PC, Short Hills, NJ, by Christopher M. Chiafullo, for defendant Sports South, Inc.

Wildman, Harrold, Allen & Dixon, Chicago, IL, by James P. Dorr, for defendant Sturm, Ruger & Co.

Renzulli, Pisciotti & Renzulli, LLP, New York City, by John F. Renzulli, Leonard S. Rosenbaum, for defendant Thompson/Center Arms.

Callan, Regenstreich, Koster & Brady, New York City, by Michael P. Kandler, Timothy G. Atwood, Shelton, CT, for defendants Uberti U.S.A., Inc.

Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Chicago, IL, by Terry Moritz, Roger A. Lewis, for defendant Walther GMBH.

Paul, Hastings, Janofsky & Walker, LLP, Stamford, CT, by Douglas C. Conroy, for defendant Weatherby, Inc.

*MEMORANDUM AND ORDER*

WEINSTEIN, Senior District Judge.

TABLE OF CONTENTS

I. Introduction ................................................. 450
II. Procedural History .......................................... 451
III. Facts ...................................................... 451
IV. Law ......................................................... 453
   A. Burden of Proof ......................................... 453
   B. Failure to State a Claim ................................ 454
   C. Standing ................................................ 455
      1. Injury–In–Fact ...................................... 455
      2. Causation ........................................... 456
      3. Redressability ...................................... 456
      4. Organizations ....................................... 457
         a. Own Behalf ....................................... 457
         b. Representation of Members ......................... 457
   D. Subject Matter Jurisdiction ............................. 458
   E. Personal Jurisdiction ................................... 458
V. Application of Law to Facts .................................. 458
   A. Burden of Proof ......................................... 458
   B. Failure to State a Claim ................................ 458
   C. Standing ................................................ 459
      1. Own Behalf .......................................... 459
         a. Injury–In–Fact ................................... 459
         b. Causation ........................................ 460
         c. Redressability ................................... 460
      2. Representation of Members ............................ 460
         a. Members in Their Own Right ....................... 460
         b. Interests Germane to the Organization's Purpose ... 461
         c. Participation of Individual Members in the Lawsuit Not Required ..................................... 461
   D. Subject Matter Jurisdiction ............................. 461
   E. Personal Jurisdiction ................................... 462
VI. Conclusion .................................................. 462

## I. Introduction

Plaintiff National Association for the Advancement of Colored People (NAACP) brought this action on behalf of itself and its members seeking an injunction to prevent an alleged public nuisance in the improper sale and distribution of guns resulting in thousands of deaths a year. Defendants are manufacturers and distributors of handguns. Defendants have moved to dismiss and for summary judgment on the grounds that plaintiff lacks standing and has failed to state

a claim, and that the court lacks subject matter and personal jurisdiction. These motions are denied. Challenges to personal jurisdiction by individual defendants have been dealt with in prior orders.

## II. Procedural History

In July 1999 the NAACP sued manufacturers of firearms, alleging that their conduct in marketing, distributing, and selling handguns in the United States has caused proliferation of handguns in the hands of criminals, leading to rampant gun violence and resulting in a continuing public nuisance. Sought is injunctive relief, including restrictions on the method of sale and transfer of guns and other relief to abate the nuisance. Fifth Amended Complaint ¶ 319. In October 1999, the NAACP brought a similar action against distributors of firearms. These two actions were consolidated for all purposes in May 2002.

The manufacturer defendants jointly move for summary judgment on the grounds that the NAACP lacks standing and the court does not have subject matter jurisdiction. Distributor defendants move to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure on the grounds that the NAACP lacks standing, has failed to state a justiciable claim, and the court lacks subject matter jurisdiction and personal jurisdiction over defendants.

## III. Facts

The NAACP was organized in 1909 at Cooper Union in New York. *See, e.g.,* Richard Kluger, *Simple Justice* 97, 98 (1976). It was incorporated in New York, and currently maintains its principal place of business in Maryland. Fifth Amend.Comp. ¶ 10. It is a national organization, with members in all fifty states, the District of Columbia, and overseas. *Id.* The purpose of the NAACP is "to insure the ... equality of minority group citizens [and] achieve equality of rights." Constitution of the National Association for the Advancement of Colored People, Art. 1 (July 1996).

The NAACP has a long and distinguished history of working on behalf of African Americans and other minorities. It, and its offshoot the Legal Defense Fund, have been responsible for many leading cases protecting the safety and rights of minorities. *See* Jack Greenberg, *Crusaders in the Courts* 19–21 (NAACP created the Legal Defense and Education Fund, Inc. in 1940). It is not an ad hoc group organized to harass gun manufacturers and distributors. It is an organization that has battled with substantial success for generations to protect the civil rights and liberties as well as the economic and social freedom and opportunities of people of color in the United States—predominately African Americans—who, during most of the organization's life, have been abused and denigrated by governments and private persons. *See, e.g.,* Howard Ball, *A Defiant Life: Thurgood Marshall & the Persistence of Racism in America* 19–56 (1998); Robert L. Carter, Thirty-Five Years Later: New perspective on *Brown, in Race in America: The Struggle For Equality* 83–96 (Herbert Hill & James, esqs., (1993); Roger Goldman with David Gallen, *Thurgood Marshall: Justice for All, passim* (1992); Jack Greenberg, *Crusaders in the Courts, passim* (1994); Jack Greenberg, *Race Relations and American Law* 23 (1959); Jeffrey Brandon Morris, *Calmly to Poise the Scales of Justice* 199–200 (2001); Constance Baker Motley, *Equal Justice Under Law* 58 & *passim* (1998); J.R. Pole, *The Pursuit of Equality in American History* 265–66 (1978); Thurgood Marshall, *His Speeches, Writings, Arguments, Opinions, and Reminiscences* 436–441 (Mark V. Tushnet ed., 2001); Sanford Wexler, *The Civil Rights Movement* 29–38 (1993); Nancy Whitelaw, *Mr. Civil Rights: The Story of Thurgood Marshall, passim* (1995).

The Supreme Court first upheld the representational standing of the NAACP in *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 459, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) (Alabama sought to compel disclosure of the names of Alabama members of the NAACP; NAACP's representational standing on behalf of Alabama members upheld). Since that time, the courts have repeatedly upheld standing for the NAACP, both on behalf of itself and of its members. *See, e.g., NAACP v. Button,* 371 U.S. 415, 428, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) (recognizing standing on the NAACP's own behalf and representational standing in action seeking to declare unconstitutional statutes that forbade the NAACP from funding litigation in order

to assist parties in asserting their constitutional rights); *NAACP Anne Arundel County v. City of Annapolis,* 133 F.Supp.2d 795, 812–13 (D.Md.2001) (recognizing standing on the NAACP's own behalf and representational standing in action seeking to declare state anti-loitering statute violative of the First and Fourteenth Amendments); *White v. Engler,* 188 F.Supp.2d 730, 743 (E.D.Mich.2001) (recognizing representational standing in action seeking to declare state trust fund awarding scholarships to qualified candidates violative of the Equal Protection Clause); *Rodriguez v. California Highway Patrol,* 89 F.Supp.2d 1131, 1136 (N.D.Cal.2000) (recognizing representational standing in action challenging police racial profiling); *Maryland State Conference of NAACP Branches v. Maryland State Dep't of Police,* 72 F.Supp.2d 560, 565 (D.Md.1999) (recognizing standing on the NAACP's own behalf and representational standing in action challenging police racial profiling); *NAACP Philadelphia Branch v. Ridge,* 2000 WL 1146619, *2 (E.D.Pa.2000) (recognizing representational standing in action seeking to declare unconstitutional state policy of preventing ex-felons from voting).

The NAACP is well known in the courts for taking an active role in protecting the rights of persons of color; it is a respected leader in the field. The historical weight of the NAACP's activities lend substance to its assertion of standing and its claim that it, and its members, as well as the broader population on whose behalf it is dedicated, are adversely affected by defendant's activities.

The defendant handgun manufacturers and distributors are from more than thirty states and several foreign countries. Fifth Amend. Comp. ¶¶ 18–273. In brief, the NAACP argues that the sales practices of these defendants lead to "rampant gun violence," and that this gun violence has harmed both the NAACP as an organization and individual members of the NAACP, including several named New York State NAACP members.

Widespread access to and use of guns presents serious problems with health, social, and economic implications, both nationally and in New York. According to the Centers for Disease Control, 28,874 deaths in the United States were caused by firearms in 1999. *See* National Center for Injury Prevention and Control, Centers for Disease Control, Web-based Injury Statistics Query and Reporting System (WISQARS), *at* http://www.cdc.gov/ncipc/wisqars/ (most recent statistics available). More than 1,000 deaths in New York State were caused by firearms that same year. *See id.* Firearms are estimated to have caused tens of thousands of non-fatal injuries nationally. *See id.*

The NAACP alleges that defendants aggressively engage in efforts to oversell guns, and that they have continued to engage in this practice in the face of evidence that it leads to the acquisition of guns by "prohibited persons." Many of the guns, it is alleged, that are improperly sold in states with limited local controls move to states like New York, which has strict limits on sale and possession. This underground traffic, it is contended, encourages illegal use of guns in states like New York. The NAACP contends that the disproportionate number of "crime guns" sold by defendants and repeated sales to distributors whose sales practices disproportionately put guns in the hands of criminals lead to high levels of gun violence.

Widespread access to guns and gun violence has a disproportionate effect on African American communities in two respects. *See* Marc Mauer, The Sentencing Project, *The Crisis of the Young African American Male and the Criminal Justice System,* 2 (1999). First, African Americans are significantly more likely to be victims of crime. *Id.* African–Americans represent less than 13 percent of the total population of the United States, but approximately 52% of gun homicide victims. Judith Bonderman, Office for Victims of Crime, U.S. Dep't of Justice, *Working with Victims of Gun Violence* (July 2001). Homicide is the leading cause of death for African Americans between the ages of 15 and 34; approximately 85% of those homicides were committed with a firearm. *See* National Center for Injury Prevention and Control, *supra* (statistics for 1999, most recent year available).

African Americans are more likely to be under some kind of criminal justice supervi-

sion—many because of their access to guns. *See* Mauer, *supra,* at 2. Nearly 1 in 3 African American males between the ages of 20 and 29 is under some form of criminal justice supervision. *See id.* at 3. The result of these effects is a complex set of individual and community consequences adversely affecting the NAACP and its members. *See id.* at 2–3.

As Attorney General John Ashcroft has declared, "[g]un violence corrodes the fabric of our communities." Office for Victims of Crime, U.S. Dep't of Justice, *OVC Bulletin* (July 2001). Gun violence has a variety of long-term, traumatic psychosocial consequences. *See generally* Bonderman, *supra.* The results are particularly devastating on communities disproportionately affected by chronic abuse of guns. *See id.* at 6. Gun violence also exacts a substantial economic toll on its victims, their families, and their communities in burdens placed on the health care system, lost productivity, pain and suffering, and diminished quality of life. Bonderman, *supra,* at 7–8.

Individual New York members of the NAACP are harmed by gun violence. The named members have lost a family member as a result of gun violence or have themselves been shot at. The NAACP alleges that these individual members are at risk of future injury from gun violence because of their color or their occupations.

Gun violence has also allegedly harmed and will continue to harm the NAACP as an organization by forcing the NAACP to modify the way that it carries out its work and constraining its ability to effectively do so. High levels of crime, and particularly of gun violence, cause people, particularly in high crime areas, to stay at home rather than become involved in their communities through organizations like the NAACP. The fact that gun violence has a disproportionate effect on African American communities increases this fear and shrinks the pool from which members of the NAACP are drawn. Many who might otherwise be members are victims of gun violence. Gun violence thus limits both the potential and the actual membership of the NAACP, and therefore the financial support that the NAACP receives from its members.

The possible membership of the NAACP is further limited by the enormous percentage of young African American males who are incarcerated as a result of the excessive availability of guns in their communities. The United States Sentencing Commission reports that the offender was African American in 48.7% of guidelines cases where the primary offense category was firearms. United States Sentencing Commission, 2001 Sourcebook of Federal Sentencing Statistics. Guns are involved in a large number of crimes; the availability of guns results in the imprisonment of many young men for crimes they otherwise would not have committed, thus excluding them from the pool of potential NAACP members. *See* Mauer, *supra,* at 4–5.

Gun violence also constrains the activities undertaken by the NAACP. Individuals may be reluctant to attend meetings or participate in activities in areas with high levels of gun violence. People may be unwilling to work for the NAACP when its offices are located in areas where gun violence is a particular problem, making a local presence in areas where its potential members live more difficult. Gun violence imposes a financial burden on the organization. The NAACP must expend funds protecting against gun violence and attempting to educate its members to prevent future gun violence; this money would be available for other activities if the sales practices of manufacturers and distributors did not result in such widespread availability of guns.

## IV. Law

### A. Burden of Proof

A plaintiff seeking to invoke federal jurisdiction bears the burden of establishing the elements of standing and the court's subject matter and personal jurisdiction. It must also state a claim on which relief can be granted. The nature of the burden depends on the stage of the litigation.

On a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a mo-

tion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim. In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations and quotations omitted). Where some discovery has taken place, "plaintiffs must make a prima facie showing of jurisdiction. This demonstration must include an averment of facts, that if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Hamilton v. Accu-Tek,* 32 F.Supp.2d 47, 52 (E.D.N.Y.1998) (internal quotations omitted); *see also Metropolitan Life Insurance Company v. Robertson–Ceco Corp.,* 84 F.3d 560, 566–67 (2d Cir.1996); *Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194 (2d Cir.1990).

### B. Failure to State a Claim

A motion to dismiss for failure to state a claim must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig,* 25 F.3d 1168 (2d Cir.1994) (internal quotations omitted). The court must take "as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff." *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.,* 32 F.3d 697 (2d Cir.1994). The issue is not whether the plaintiff will ultimately prevail, but whether plaintiff is entitled to offer evidence to support the claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Judicial notice may be taken of well-known facts which may support or undermine a claim. *See* Fed.R.Evid.Rule 201.

Trial courts have broad discretion to manage proceedings in the interests of justice, fairness, and economy. *See* Fed.R.Civ.Pro. 16; *cf.* Fed.R.Civ.Pro. 26(b)(2) (court's power to limit discovery); Fed.Rules.Evid. 403 (court's discretion to exclude evidence); *see also Hoffmann–LaRoche Inc. v. Sperling,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) ("This authority is well settled, as courts traditionally have exercised considerable authority to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." (internal quotations omitted)). This discretion includes the power to formulate and simplify the issues. *See* Fed.R.Civ.Pro. 16(c)(1).

■■■ Under *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), New York law determines whether plaintiffs have stated a claim for public nuisance. In brief, public nuisance under New York law "consists of conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all in a manner such as to offend public morals, interfere with use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons." *Copart Industries, Inc. v. Consolidated Edison Co. of New York,* 41 N.Y.2d 564, 394 N.Y.S.2d 169, 362 N.E.2d 968 (1977) (internal citations omitted). A private person "who suffers damage or injury, beyond that of the general inconvenience to the public at large, may recover for such nuisance in damages or obtain [an] injunction to prevent its continuance." *Leo v. General Electric Co.,* 145 A.D.2d 291, 294, 538 N.Y.S.2d 844 (N.Y.App. Div.1989); *Graceland Corp. v. Consolidated Laundries Corp.,* 7 A.D.2d 89, 91, 180 N.Y.S.2d 644 (N.Y.App.Div.1958); *see also Prosser, Wade, and Schwartz's Torts,* 802 et. seq. (10th ed.2000); 66 C.J.S. Nuisances § 65 (Westlaw 2002).

The question of whether, under New York law, a public nuisance may arise out of the manufacture and distribution of handguns that are unlawfully possessed and used in New York remains open. The highest court in the state of New York has not spoken on the matter. In considering a claim against gun manufacturers and distributors, the Supreme Court of New York, New York County, found that, although "[t]here can be no dispute that the unlawful use of handguns constitutes a public nuisance," plaintiffs had

failed to allege facts that "would demonstrate that defendants are somehow contributing to the handgun nuisance." *People of the State of New York v. Sturm, Ruger & Company,* Index No. 402586/00, at 20, 27 (N.Y.Sup.Ct. Aug. 10, 2001). The court left open the possibility that such a showing might "become possible as further [Bureau of Alcohol, Tobacco, and Firearms] BATF investigations provide more information about the manufacture, sale and eventual unlawful use of handguns." *Id.* at 27.

The New York State Court of Appeals has not ruled on the question of whether gun manufacturers' and distributors' conduct in the marketing and distribution of handguns constitutes a public nuisance. It has considered whether gun manufacturers owe a duty to individual victims of gun violence to exercise reasonable care in the marketing and distribution of the handguns they manufacture. *Hamilton v. Beretta U.S.A. Corp.,* 96 N.Y.2d 222, 727 N.Y.S.2d 7, 750 N.E.2d 1055 (2001). While the Court of Appeals ultimately found that no such duty existed on the facts of the case before it, it recognized that a duty might be established in a future case where a more direct causal link between the conduct of the manufacturers and the injury suffered by a plaintiff could be demonstrated. *Id.* at 233–34, 238, 242, 727 N.Y.S.2d 7, 750 N.E.2d 1055.

It is significant that BATF will be supplying data to the parties in the present case not previously available. *NAACP v. Acusport,* 210 F.R.D. 268 (E.D.N.Y.2002). This data and expert evidence based upon it may well provide whatever evidence was lacking in *People of the State of New York v. Sturm, Ruger & Company,* Index No. 402586/00, at 20, 27 (N.Y.Sup.Ct. Aug. 10, 2001), or *Hamilton v. Beretta U.S.A. Corp.,* 96 N.Y.2d 222, 727 N.Y.S.2d 7, 750 N.E.2d 1055 (2001).

## C. Standing

Courts are confined by Article III of the Constitution to adjudicating only actual cases and controversies. *Allen v. Wright,* 468 U.S. 737, 756, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). A litigant must "have 'standing' to invoke the power of a federal court". *Id.* at 750–51, 104 S.Ct. 3315. The central issues in any Article III standing inquiry are threefold: 1) injury-in-fact, 2) causation, and 3) redressability. First, the plaintiff must demonstrate that he suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations and quotation omitted). Second, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not ... the result of some independent action of some third party not before the court." *Id.* (citation and quotations omitted). Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (citation and quotations omitted).

### 1. Injury–In–Fact

Plaintiff must have personally suffered an injury. An "abstract interest" in an issue does not in itself confer standing to challenge rules or activities that may bear on that interest. In *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), the Supreme Court ruled that the Sierra Club lacked standing to challenge a Forest Service project that the Sierra Club found objectionable. *Id.* at 738–40, 92 S.Ct. 1361. The Court noted that anyone whose use of the land in question would be affected by the project would have standing to sue; the Sierra Club's concern with protecting natural resources was not alone sufficient to establish standing. *Id.* Courts should refrain "from adjudicating abstract questions of wide public significance which amount to generalized grievances, pervasively shared and most appropriately addressed in the representative branches." *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 474–76, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). So long as a plaintiff "has been or will in fact be perceptibly harmed," "standing is not to be denied simply because many people suffer the same injury." *United States v. Students Challeng-*

*ing Regulatory Agency Procedures,* 412 U.S. 669, 687–88, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973).

The injury suffered need not be substantial or significant—"an identifiable trifle is enough for standing to fight out a question of principle." *Id.* at 689, n. 14, 93 S.Ct. 2405 (quotations and citations omitted). Harm need not be economic in nature to satisfy the injury-in-fact requirement, but must be "distinct and palpable." *See Sullivan v. Syracuse Housing Authority,* 962 F.2d 1101, 1107 (2d Cir.1992), *quoting Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In *Sullivan,* the court of appeals for the Second Circuit found that a plaintiff had standing where the only injuries alleged were psychological, but where these harms resulted from direct contact with the objectionable activity rather than from some general anxiety. The court stated that "the sufficiency of any type of interest or injury to confer standing is subject to the critical requirements that the party asserting the interest or injury have a direct and personal stake in the controversy, and that the judicial process not be converted into a vehicle for the vindication of value interests of concerned bystanders." *Id.* (internal quotation marks and citations omitted).

There must be a connection between the harm alleged and the relief sought. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). ("A plaintiff must demonstrate standing for each form of relief sought."). Where the plaintiff seeks injunctive relief, a "real and immediate likelihood of future injury is required." *City of Los Angeles v. Lyons,* 461 U.S. 95, 105–106, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Injunctive relief may be appropriate where monetary damages would not provide adequate compensation. *See Jayaraj v. Scappini,* 66 F.3d 36, 39 (2d Cir.1995).

### 2. Causation

Causation analysis is complex and case specific. The key question in determining causation is whether the injury is "fairly traceable" to the conduct of the defendant. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *see Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. 59, 74, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). Causation for standing purposes is less rigorous than the traditional tort concept of causation. *See* Charles Allen Wright, Arthur R. Miller, & Edward H. Cooper, 13 Federal Practice and Procedure § 3531.5 at 443 (1984 & Supp. 2002).

The causation requirement is not met where the injury "results from the independent action of some third party not before the court." *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Indirect injury is sufficient so long as some causal nexus is shown. *See Heldman v. Sobol,* 962 F.2d 148, 156 (1992). In *Natural Resources Defense Council v. Texaco Ref. & Marketing, Inc.,* 2 F.3d 493, 504–05 (3d Cir.1993), the causation requirement was satisfied where the defendant unlawfully discharged chemicals into waters in which the plaintiff had an interest, and where the chemicals caused or contributed to the kinds of injuries alleged; it was not necessary to show that the particular discharges of the defendant were the cause of the particular injuries asserted. In *United States v. Students Challenging Regulatory Agency Procedures,* 412 U.S. 669, 688–90, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), the Supreme Court found that, absent a showing "that the allegations were sham," the line of causation was not too attenuated where plaintiffs alleged that a general railroad rate increase would "cause increased use of nonrecyclable commodities as compared to recyclable goods, thus resulting in the need to use more natural resources to produce such goods … and resulting in more refuse that might be discarded in national parks in the Washington area."

### 3. Redressability

"The necessity that the plaintiff who seeks to invoke judicial power stand to profit in some personal interest remains an Art. III requirement." *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 39, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). It must be more than merely speculative to

suggest that the relief requested will redress the injury suffered. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 571, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In *Simon,* plaintiffs were indigents suing to revoke favorable tax treatment for hospitals that did not meet applicable standards in providing care for indigents. The Court denied standing because, among other things, there was no evidence that plaintiffs would receive the hospital services they desired even if the Internal Revenue Service was required to revoke the hospitals' tax status. *Id.* at 43–44, 96 S.Ct. 1917.

The remedy sought need not be capable of redressing the alleged injury completely; "there need only be a substantial likelihood that the relief requested will have a substantial ameliorative effect on the specific injury alleged." *Fulani v. League of Women Voters Educ. Fund,* 882 F.2d 621, 628 n. 6 (2d Cir.1989). *But see Greenberg v. Bush,* 150 F.Supp.2d 447, 455 (E.D.N.Y.2001) ("Plaintiffs must also show that if the court affords the relief requested, the asserted violent actions directed at plaintiffs will cease.").

### 4. Organizations

■ An organization may assert standing on its own behalf as well as on behalf of its members. *See Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

#### a. Own Behalf

■ An organization suing on account of injuries it itself has suffered is in much the same position as any other plaintiff for purposes of standing. Several types of injury have been recognized as sufficient to confer standing on an organization suing on its own behalf. An organization may suffer injury to its interests. *See, e.g., Irish Lesbian & Gay Org. v. Giuliani,* 143 F.3d 638, 649–51 (2d Cir.1998) (organization that was denied permit had standing to sue because, *inter alia,* it suffered reputational harm and was denied an opportunity to express its message); *International Union, United Automobile Workers v. Brock,* 783 F.2d 237, 246–47 (D.C.Cir.1986) (labor union had standing to challenge law on grounds it deprived union of

access to certain employer information and interfered with union's ability to organize workers); *Padberg v. McGrath–McKechnie,* 203 F.Supp.2d 261 (E.D.N.Y.2002) (opportunity cost incurred by organization in defending drivers subject to disciplinary action under challenged city initiative was sufficient to confer standing). An organization may be harmed if defendant's activity reduces membership dues or other contributions the organization would otherwise collect. *See, e.g., Pilsen Neighbors Community Council v. Netsch,* 960 F.2d 676, 682, n. 6 (7th Cir.1992) (organization collecting contributions from members through withholdings had standing to challenge statute that regulated withholdings); *Taxation with Representation of Washington v. Regan,* 676 F.2d 715, 722–23 (D.C.Cir.1982) (organization had standing to challenge rule on tax deductions that would adversely affect organization's ability to raise funds); *Construction Ind. Assn. Of Sonoma County v. City of Petaluma,* 522 F.2d 897, 903 (9th Cir.1975), *cert. denied* 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 342 (organization can satisfy injury-in-fact requirement through showing lost revenue).

#### b. Representation of Members

■ Even an organization that lacks standing to sue on its own behalf may prosecute a suit on behalf of its members. This "representational standing" introduces an additional layer of analytical complexity. "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *International Union, United Auto., Aerospace and Agr. Implement Workers of America v. Brock,* 477 U.S. 274, 282, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986), *quoting Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

In order to establish standing to sue in their own right, the individual members of an organization must be able to demonstrate the

requirements for Article III standing: injury, causation, and redressability. *See Friends of the Earth v. Laidlaw Envt'l Services, Inc.,* 528 U.S. 167, 181–83, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). The organization must show that the interests that it seeks to represent are related to its goals as an organization. In order to establish that the participation of individual members is not required, the organization must show that there is no conflict of interest or diversity of views that would prevent the organization from effectively representing its membership. Participation of individual members *is* required where "essential to a proper understanding and resolution of their ... claims." *Harris v. McRae,* 448 U.S. 297, 320–21, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). In *Harris v. McRae,* associational standing was denied on the grounds that the suit required the participation of individual members because a free exercise claim involves a showing that the challenged statute would have a coercive effect on the individual members' practice of religion. *Id.*

### D. Subject Matter Jurisdiction

For a case to come within the diversity statute there must be complete diversity among all parties; that is, no named plaintiff and no named defendant may be citizens of the same state. *See Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). The test for determining the existence of diversity jurisdiction is generally "the citizenship of real parties to the controversy." *See Navarro Savings Ass'n v. Lee,* 446 U.S. 458, 461, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980). The real parties to a controversy are those who will be affected in a real and substantial way by the outcome of the litigation. *See Arkwright–Boston Manufacturers Mutual Insurance Co. v. Truck Insurance Exchange,* 979 F.Supp. 155, 160–61 (E.D.N.Y.1997), *aff'd on these grounds,* 173 F.3d 843 (2d Cir.1999); *see also Airlines Reporting Corp. v. S and N Travel, Inc.,* 58 F.3d 857 (2d Cir.1995).

■ Where a party sues solely in a representative capacity, the citizenship of the represented individuals will control for diversity purposes, since those individuals are the real and substantial parties to the dispute. *Air-*

*lines Reporting Corp. v. S and N Travel, Inc.,* 58 F.3d 857, 862 (2d Cir.1995). If the members of an organization, rather than the organization itself, are the injured parties, "they cannot by enlisting their association as their champion break out of the limits of diversity jurisdiction." *Id.* at 862, *quoting Nat'l Ass'n of Realtors v. Nat'l Real Estate Ass'n,* 894 F.2d 937, 941 (7th Cir.1990). There are three recognized exceptions to this traditional rule that the citizenship of unincorporated associations suing on behalf of their members is determined for diversity purposes by the citizenship of its members: corporations, trusts, and class actions. *See E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.,* 160 F.3d 925, 931 (2d Cir.1998).

### E. Personal Jurisdiction

Personal jurisdiction over foreign corporations for harm occurring inside New York is governed by section 302, the New York long arm statute. C.P.L.R. 302(a)(3) provides for jurisdiction over defendants who commit a tortious act outside of New York that causes injury within New York. *See also* N.Y.C.P.L.R. 301.

## V. Application of Law to Facts

### A. Burden of Proof

Although significant discovery has taken place, discovery is not yet completed. Expert reports based upon BATF data have not been exchanged, nor have the experts been deposed. *Daubert* motions and motions for summary judgment will be heard after these depositions are completed. Since so much of the evidence in the case will be statistical based on expert testimony, it cannot be said with any assurance that plaintiff will be unable to establish its case.

### B. Failure to State a Claim

■ Defendants' allegations that the NAACP has failed to state a claim upon which relief can be granted are based on their assertion that plaintiff has requested the court "to design and implement national common law standards of conduct to ameliorate [a] national problem." They argue that plaintiff's claims are nonjusticiable because it

is beyond the power of the court to create national common law and New York law alone cannot provide a remedy for a national problem. The court will limit the issue primarily to harm suffered by the New York members of the NAACP and by the organization itself in its New York work so that the contention of defendants that national law is not applicable is beside the point, *cf. Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir.2001) (district judge [need not] accept all of the complaint allegations).

That any injunction designed to protect New York residents may require changes in national selling patterns by defendants is not grounds for denying relief. *Cf., e.g.,* 42 U.S.C. § 7543(b) (2002) (waiving the prohibition on state regulation of motor vehicle emissions for state standards adopted prior to 1966); 13 Cal.Admin.Code § 1956.1 (West 2002) (providing for stricter vehicle exhaust emission standards in California than under federal regulations). It is in the nature of our federal system that a tort or other action in one state, based on the law of that state, may cause manufacturers or distributors to change their national practice; deterrence is argued by some to be of the essence in tort law. *See, e.g.,* John C.P. Goldberg, *Introduction to John W. Wade Conference on Third Restatement of Torts*, 54 Vand.L.Rev. 639, 650–51 (2001). Public nuisance can be considered for some purposes as a branch of torts, and the remedy of an injunction is explicitly designed to change conduct.

The NAACP alleges that defendants conduct interferes with public rights by causing "the proliferation of the underground market in crime guns and constitut[ing] a danger to the public health and welfare." Fifth Amended and Consolidated Complaint ¶ 312. It further enumerates distinct harm that both it and its members have suffered. *Id.* ¶ 316; *see also infra* section C. On the face of the complaint and on the basis of judicial notice of public records and gun cases already tried in this court, and discovery so far conducted, it cannot be said that it will be impossible for the NAACP to prove any set of facts that will support its claim of public nuisance. Accepting all facts alleged by plaintiff as true and provable, plaintiff has stated a claim for public nuisance on the face of its complaint.

## C. Standing

### 1. Own Behalf

#### a. Injury–In–Fact

■ The essence of a public nuisance claim is that the interest is asserted on behalf of the public in general—the public right to "public health," "public safety," and "public peace," Restatement of Torts (2nd) § 821B(2)(a). That interest is injured by widespread criminal access to firearms and the gun violence that results.

The NAACP has more than an abstract interest in the issues of criminal access to firearms and gun violence. It has allegedly suffered "distinct and palpable harm," both economic and otherwise. This injury to its interests as an organization results from widespread criminal access to firearms.

The harm asserted by the NAACP is not merely a generalized grievance, which the court should refrain from adjudicating. The generalized grievance argument finds its usual application when the activity challenged is a law or governmental policy, and the plaintiff is suing as a citizen or taxpayer concerned with having the government follow the law. *See, e.g., Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (challenging local zoning ordinances); *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (challenging government conveyance of surplus Army hospital to sectarian college without charge). Even though the public interest in the instant case may be a general one, the NAACP has allegedly suffered specific injury as a result of widespread criminal access to firearms. Where such injury is caused by the behavior of private actors—the defendant gun manufacturers and distributors—standing is not defeated.

The harm alleged and the relief sought by the NAACP are directly connected. The NAACP has sought not economic damages, but solely injunctive relief. There is a real and immediate likelihood that the injury to the NAACP's interests as an organization and the financial injury to the organization will continue indefinitely if steps are not taken to curb widespread criminal access to

firearms in New York. Monetary damages could not provide adequate compensation for such ongoing injury.

### b. Causation

Causation under a traditional analysis raises two distinct problems. First is whether plaintiff can allege anything specifically linking the named defendants to any alleged injuries. This problem of causal link is alleviated when analyzing standing asserted on the organization's own behalf. Because injury to the organization would flow from a number of incidents over time, aggregation of defendants seems appropriate. The expert evidence based upon statistical analysis of BATF date and other data may well support plaintiff's assertion of causation.

The second causation problem is one presented by intervening third party actors separating the defendants and the victims. Many defendants sell to retailers who then sell to customers; the activity of these retailers will have a major impact on where defendant's guns end up. In many cases the first purchaser of the gun will sell it to, lend it to, or have it stolen by another third party. The gun, originally acquired for benign purposes, may end up in the hands of someone who uses it in a criminal manner; this criminal actor is arguable the primary cause of whatever harm results.

Viewing the relevant injury as "widespread criminal access to firearms" circumvents the "intervening" third party actor problem. It is obviated by finding harm short of the point at which the third party acts. Assuming plaintiff will be able to demonstrate that defendants' actions could and would limit the illegal use of their firearms, criminal access to new firearms would be traceable to defendants' conduct or their failure to act reasonably.

### c. Redressability

The second causality concern—of intervening third party actors—presages the redressability problem. It will have to be demonstrated that the injunctive relief requested in this action will have a foreseeable effect on the ability of criminals to obtain and use guns illegally. Viewing the relevant injury as "widespread criminal access to firearms" circumvents the redressability problems arising from the criminal use of firearms. Injunctive relief would arguably have a remedial effect in that it would likely reduce criminal access to firearms manufactured and distributed by the defendants.

### 2. Representation of Members

### a. Members in Their Own Right

The NAACP has alleged that the individual named members have shown injury-in-fact because they have suffered actual injury to themselves or the loss of a loved one to gun violence. While such injury is concrete, particularized, and actual, it is not the type of injury that would traditionally merit standing for injunctive relief. Injuries to members are likely to be isolated incidents, at least as regards the particular injured person; a person who is shot has no great likelihood of being shot again, particularly if the first shot killed him or her. The NAACP also alleges that the named individuals are at greater risk than the rest of the population of being injured by gun violence in the future because of their ethnicity or their work among disadvantaged African American youths. Such a claim, while sufficient for standing on behalf of the organization itself in a claim for public nuisance, does not give rise to the sort of "real and immediate likelihood of future injury" to each *individual* that must be shown in order for standing to exist.

Causation when standing is asserted on behalf of N.A.A.C.P.'s members faces the same two problems as when standing is asserted on the organization's own behalf. The first problem, of a causal link between specific guns and defendants and specific injuries, is particularly problematic if standing is asserted on behalf of the members. To the extent that a gun is identified as the source of certain injuries, those injures cannot be attributed (for standing purposes) to defendants other than the specific manufacturers and distributors involved in a "trace." If the gun is unidentified, it is unclear that causation can be attributed to anyone. *See Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222,

241 n. 11, 727 N.Y.S.2d 7, 750 N.E.2d 1055 (2001). The second problem, of intervening third party actors separating the defendants and victims, applies with equal force to standing on behalf of members. It also gives rise to the same problem with redressability—will the injunctive relief requested have a foreseeable effect on the ability of criminals to obtain and use guns illegally.

While these objections to individual standing have merit, the NAACP claims between 30,000 and 50,000 New York state members. As to this large group, the probability of harm through injury of one of the group may be shown by statistical and demographic analysis to be sufficiently great as to support representational standing.

### b. Interests Germane to the Organization's Purpose

The NAACP has asserted that this action was brought in order to "improve the quality of life for African American New York [NAACP] members adversely affected by the proliferation of underground market guns." African American communities are disproportionately affected by gun violence. Accepting as true plaintiff's assertions that defendants' conduct in their methods of marketing and distributing handguns leads to the proliferation of weapons in underground markets and their use in crime, the injunctive relief requested would reduce gun violence generally and would have a particular impact on the New York African American communities which it disproportionately affects. This action, then, is germane to the NAACP's stated purpose of ensuring equality for African Americans. A lawsuit challenging a city ordinance which does not discriminate on its face but does disproportionately impact African American residents of the city is germane to the NAACP's purpose. *See NAACP Anne Arundel County Branch v. City of Annapolis,* 133 F.Supp.2d 795, 802 (D.Md.2001).

### c. Participation of Individual Members in the Lawsuit Not Required

There has been no conflict of interest or diversity of views alleged that would prevent the NAACP from effectively representing its membership.

Defendants have argued, however, that the lawsuit requires numerous individualized determinations of fact so that the participation of individual members is required in order to understand and resolve their claims. This is a claim alleging a public nuisance on the grounds that the actions of the defendants in marketing and distributing handguns endangers the public safety and welfare. While a private claim for public nuisance under New York law does require a showing that the claimant has suffered some injury distinct from that suffered by the rest of the public, such a showing may be satisfied without the participation of individual members. This is far from the level of individualized proof that has been found necessary in order to preclude representational standing. *See, e.g., Harris v. McRae,* 448 U.S. 297, 320–21, 100 S.Ct. 2671, 65 L.Ed.2d 784 (denying associational standing where a free exercise claim required a showing that the challenged statute had a coercive effect on individuals' practice of religion).

The NAACP appears competent to represent its members in a claim for public nuisance. There is no reason to believe that there is a substantial conflict of interest among members or between members and the organization on reducing gun violence.

### D. Subject Matter Jurisdiction

Accepting the factual allegations of the NAACP, as an organization it is harmed by gun violence and stands to benefit from the injunctive relief requested to reduce the proliferation of handguns and their availability to criminals. The NAACP is a real party in interest, and its citizenship is relevant for diversity purposes. *Compare Navarro Savings Association v. Lee,* 446 U.S. 458, 465–66, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980) (trustees who exercise active and substantial control over the assets in their name are real parties in interest) *with E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.,* 160 F.3d 925, 931 (2d Cir.1998) (a lead underwriter representing the interests of a group of so-called "names" who bear the insurance risk is not real party in interest); *Airlines Report-*

**462**

*ing Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 861–62 (2d Cir.1995) (non-profit corporation which advances no interests of its own but instead acts solely as agent for air carriers is not real party in interest); *Nat'l Assoc., of Realtors v. Nat'l Real Estate Assoc.*, 894 F.2d 937 (7th Cir.1990) (association of real estate agents not real party in interest where mere conduit for claim of damages for injuries suffered by individual members); *Arkwright–Boston Manufacturers Mutual Insurance Co. v. Truck Insurance Exchange*, 979 F.Supp. 155, 161 (E.D.N.Y.1997), *aff'd in relevant part* 173 F.3d 843 (2d Cir.1999) (corporation not real party in interest where it acted only as managing agent for insurance companies but did not bear ultimate risk of financial loss).

The NAACP is a citizen of New York, the state under whose laws it is organized, and Maryland, its principal place of business. No evidence has been introduced alleging that any defendant is a citizen of either Maryland or New York. The requirements for complete diversity are satisfied.

The NAACP is also, however, suing on behalf of its members. The organization has acknowledged that it has members in all fifty states, the District of Columbia, and overseas. Given the traditional rule that the citizenship of an unincorporated association suing in a representational capacity is determined for diversity purposes by the citizenship of its members, this could destroy diversity jurisdiction. Complete diversity with defendants, who are citizens of many states, would be impossible. Limiting the case to harm suffered by New York members and by the NAACP in its operations and activities in New York eliminates the diversity problem. It makes it unnecessary to consider whether, given the unique nature of a public nuisance action, an unincorporated association in a suit alleging a public nuisance should be treated as the real party in interest whose citizenship governs for diversity purposes.

E.   Personal Jurisdiction

Limiting the case to harm suffered by New York members of the NAACP and by the organization itself in the course of its activities in New York means that harm occurring outside New York is not a controlling issue. Those defendants who have not been properly served or who are not covered by New York's long arm jurisdiction have been dismissed. The court has personal jurisdiction over remaining defendants.

VI.   Conclusion

The present motions and cross motions to dismiss for lack of standing, lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim and the motion for summary judgement for lack of standing and lack of subject matter jurisdiction are denied. Certification for purposes of allowing an interlocutory appeal is denied. *See* 28 U.S.C. § 1292.

SO ORDERED.